**UNITED STATES of America,**
**Appellee,**

v.

**Quran PENDER, a/k/a Hollywood,**
**Defendant,**

**Kawanni PETTAWAY, Defendant–**
**Appellant.**

**No. 01–1583.**

United States Court of Appeals,
Second Circuit.

Feb. 26, 2003.

---

John A. Cirando, Syracuse, NY, for Appellant.

Barbara D. Cottrell, Senior Litigation Cousel (Paul D. Silver, Assistant United States Attorney, Glenn T. Suddaby, United States Attorney for the Northern District of New York, on the brief), Albany, NY, for Appellee, of counsel.

PRESENT: VAN GRAAFEILAND, CABRANES and F.I. PARKER, Circuit Judges.

### SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 26th day of February, two thousand and three.

UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

On May 16, 2001, defendant-appellant Kawanni Pettaway was convicted, following a jury trial, of conspiracy to distribute and to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. On September 28, 2001, Pettaway was sentenced principally to 84 months of imprisonment, and he timely filed this appeal.

■ Pettaway first argues on appeal that the District Court abused its discretion by asking prospective jurors during voir dire whether the fact that Pettaway was black would affect their ability to give him a fair trial. He notes that neither he nor the Government requested that the prospective jurors be questioned about his race, and he argues that the question was improper because it "implanted a seed into the white venirepersons' minds that [he] fit the profile of a stereotypical drug dealer." Def.'s Br. at 33. Pettaway also argues that the District Court abused its discretion by asking the one black potential juror whether he would "tend to give [Pettaway] an extra favoritism" because they are both black. Tr., May 14, 2001, at 46. Because he did not object to this line of questioning before the District Court, Pettaway concedes that he is only entitled to relief if the District Court's race-based questioning amounted to plain error. *See Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

"The conduct of the *voir dire* is entrusted to the broad discretion of the trial judge ... and an appellate court will not interfere with the manner in which it has been conducted absent a clear abuse of discretion." *United States v. Salameh,* 152 F.3d 88, 121 (2d Cir.1998) (citation and quotation marks omitted). "How best to [prevent racial bias from infecting a jury] is primarily left to the broad discretion of the district court." *United States v. Taylor,* 92 F.3d 1313, 1324 (2d Cir.1996). In this case, the District Court's questions on voir dire with respect to race were perfectly appropriate in order to ensure that the jurors were not racially biased. Accordingly, the District Court did not abuse its discretion, and it certainly did not commit plain error, by asking these questions.

■ Next Pettaway argues that the evidence was insufficient to support his conspiracy conviction. To prevail on this claim, Pettaway must establish that "no rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime charged." *United States v. Friedman,* 300 F.3d 111, 123–24 (2d Cir.2002). At trial, Derick Paniagua, a government informant, testified that he had purchased crack cocaine several times a week over the past few months from both Pettaway and his co-defendant, Quran Pender. Tr., May 14, 2001, at 205–06. Further, Pender himself testified that he was an "equal partner" with Pettaway in their drug business. *Id.* at 292. Based on this testimony, a rational trier of fact certainly could have found the essential elements of the conspiracy charge beyond a reasonable doubt.

■ Pettaway also argues that he is entitled to a new trial because three jurors inadvertently took certain exhibits (transcripts of tape recordings made during an arranged sale) with them into the jury room during their lunch break. As soon as the District Court realized what had occurred, it called the jurors back into the courtroom and questioned them about the matter. All three jurors stated that they had not read the transcripts, *id.* at 405–06, and neither Pettaway nor the Government made any objections or proffered a motion to the Court in response to this incident.

Because Pettaway failed to raise this issue in the District Court, he is only entitled to relief if there is "an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting Fed.R.Crim.P. 52(b)). In this case, Pettaway has failed to demonstrate that the Court committed error, much less plain error, by accidentally allowing the jurors to take the transcripts with them into the jury room: Because the jurors did not read the transcripts, this

incident did not have any effect upon the trial, let alone an effect upon Pettaway's substantial rights.

■ Finally, Pettaway argues that he is entitled to a new trial because the Government inadvertently destroyed some of the evidence–namely, the tape recordings of an arranged sale–during the pendency of this appeal. Because these recordings were not relevant to any other issue raised by Pettaway on appeal, and because there is no evidence that the Government deliberately destroyed evidence to jeopardize this appeal, Pettaway is not entitled to relief on this ground.

Accordingly, the judgment of the District Court is hereby AFFIRMED.